# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

YANCY D. DAVIS,

        Plaintiff,

v.

Case No. 2:09-CV-14892

HON. MARIANNE O. BATTANI

DEARBORN, CITY OF, et al.,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Before the Court is Defendants Dan Hardy and the National Railroad Passenger Corporation's Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted. In her Complaint, Plaintiff Yancy Davis alleges violations of state and federal law in connection with the sale of her vehicle. For the reasons discussed below, the Court grants Defendants' motion in its entirety.

### II. STATEMENT OF FACTS AND PROCEDURAL POSTURE

This suit arises from the impoundment and subsequent sale of Plaintiff's 1998 Mercedes Benz. Claiming violations of numerous constitutional and statutory rights, Davis, proceeding *pro se*,[1] filed suit against the City of Dearborn, the Dearborn Police Department, Officer Dennis David (collectively "the Dearborn Defendants"), the National Railroad Passenger Corporation ("Amtrak"), and Amtrak employee Dan Hardy (collectively "the Amtrak Defendants"). Davis seeks monetary damages, injunctive relief, and declaratory relief.

---

[1] Plaintiff attended Thomas M. Cooley Law School from September 2002 to April 2005.

On September 1, 2007,[2] Plaintiff parked her vehicle at the Amtrak station's parking lot located in Dearborn, Michigan. (Pl.'s Second Am. Comp1. ¶ 13.) Plaintiff insists the car was parked legally and had a valid Missouri License plate. (Id.) Thereafter, Plaintiff departed for Kansas City, Missouri to visit her mother. (Id. ¶¶ 17-18.) Plaintiff did not encounter any Amtrak employees prior to her departure. (Id. ¶ 15.) She claims her stay in Missouri was extended unexpectedly, and she was forced to leave her car parked at the Amtrak lot longer than anticipated. (Id. ¶ 19.) Davis further claims that between October of 2007 and January of 2008, she left 20-30 voicemails notifying the Amtrak employees of this unforeseen delay. (Id. ¶¶ 19-20.) According to Plaintiff, these messages detailed the location and description of the vehicle to notify Amtrak that the vehicle had not been abandoned. (Id. ¶¶ 19-21.)

Plaintiff alleges that from these voicemails Defendant Hardy discovered that she is an African American woman. (Id. ¶ 39.) Subsequently, based upon his desire to discriminate against African Americans, Hardy submitted a falsified police report urging the Dearborn Police Department to tow and impound Plaintiff's vehicle. (Id. ¶ 42.) According to the Complaint, at Hardy's request, the Dearborn Defendants unlawfully (and with discriminatory motives) towed, impounded, and sold her vehicle between November 12, 2007, and December 20, 2007. (Id. ¶¶ 45, 55.) To support an inference of racial discrimination, Plaintiff offers the following two facts: (1) the car was left undisturbed for well over one month before Hardy learned that she (an African American woman) owned it; and (2) the car was towed shortly after Hardy discovered that it belonged to an African American woman. (See Pl.'s Br. Opp. Mot. Dismiss 5-6.)

During the impoundment/sale process, the Amtrak Defendants purposely ignored Plaintiff or provided her with false information in an attempt to prevent her from recovering her

---

[2] The Complaint states that the car was parked on September 1, 2009. Presumably, however, the Plaintiff intended to state September 1, 2007.

2

vehicle. (Id. at 7.) Also, Plaintiff asserts that Hardy and David conspired and coordinated throughout the entire process, which culminated in the unlawful sale of her vehicle. (Id. at 6-7.)

Based on the above-described transaction, Plaintiff filed suit in the United States District Court for the Eastern District of Missouri. (See Pl.'s Compl.) Plaintiff sought leave to proceed *in forma pauperis*, and the court granted her application. The matter was transferred to this Court pursuant to 29 U.S.C. § 1406(a). At the time of transfer, a Rule 12(b) Motion to Dismiss was pending. (See Order Transferring Action (December 11, 2009).) That motion, which challenged personal jurisdiction and venue, was denied. (Id.) After the proceeding was transferred to this Court, the Amtrak Defendants moved for an extension of time to file their responsive pleadings. (See Def.'s Mot. Extension.) That motion was granted. (Id.) Thereafter, Plaintiff filed a Second Amended Complaint without leave of court. The Amtrak Defendants then filed the second Rule 12 motion to dismiss which is now before the Court.

## III. STANDARD OF REVIEW

It is well settled that "a document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal citations omitted). However, even *pro se* litigants must satisfy minimum procedural requirements. Indeed, the Sixth Circuit has recognized that the Supreme Court's "liberal construction" case law has not had the effect of "abrogat[ing] basic pleading essentials in *pro se* suits." Wells v. Brown, 891 F.2d 591, 594 (1989). Although it is elementary that *pro se* filings are to be accorded a favorable construction, the Court is not required to conjure up unplead allegations or guess at the nature of an argument. See Wells v.

Brown, 891 F.2d 591, 594 (6th Cir. 2002). Of course, these overarching principles of construction necessarily influence a court's 12(b)(6) analysis.

Federal Rule of Civil Procedure 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief may be granted." To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell* Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2006)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The "plausibility standard" initially articulated in Twombly does not require *probability*; it does, however, ask for "more than a sheer possibility that a defendant has acted unlawfully." Id. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotation marks omitted). Simply put, unless a plaintiff has alleged facts sufficient to nudge his claims across the line from conceivable to plausible, his complaint must be dismissed. Twombly, 550 U.S. at 570.

## IV. ANALYSIS

### A. Preliminary Procedural Questions

In their Rule 12(b)(6) Motion to Dismiss, the Amtrak Defendants challenge the legal sufficiency of all of the claims set forth in the Plaintiff's Second Amended Complaint. Before the Court proceeds to the merits of the Amtrak Defendants' second Rule 12 Motion to Dismiss, certain threshold procedural issues must be resolved.

*1. The Viability of Plaintiff's Second Amended Complaint*

On December 30, 2009, Plaintiff filed her second amended complaint. As the Amtrak Defendants have noted, the filing of this document did not comport with the applicable procedural guidelines. (See Def.'s Resp. Pl.'s Mem. Supp. Second Am. Compl. (January 11, 2010).) Under Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may only amend its pleadings as a matter of course within a particular twenty-one day timeframe. In this instance, the applicable period had expired prior to the filing of Plaintiff's Second Amended Complaint. Therefore, Plaintiff was, as a matter of law, required to seek leave of court prior to the filing of her Second Amended Complaint. However, in a document filed on January 11, 2010, the Amtrak Defendants consented to the addition of Plaintiff's Second Amended Complaint. (Id. at 2.)

Under Rule 15(a)(2), a party seeking to amend a pleading after the expiration of the 21-day amendment-as-of-course-period may do so with leave of court *or* the opposing party's written consent. Even after-the-fact acquiescence—as is the case here—is sufficient to satisfy Rule 15(a)(2)'s "opposing party's consent" clause. See 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure, § 1490 (3d ed. 2010). Accordingly, the Court will view Plaintiff's Second Amended Complaint as the operative pleading for purposes of the instant motion to dismiss.

2. *Permissibility of Successive Rule 12 Motions Under Subdivision (g)*

In response to the Amtrak Defendants' motion to dismiss, Plaintiff argues that Rule 12(g) explicitly prohibits the filing of successive pre-answer Rule 12 motions, and therefore the Defendants' motion must be dismissed as untimely. (Pl.'s Resp. Br. Opp. Def.'s Mot. Dismiss 2.) Also, Plaintiff urges the Court to impose Rule 11 sanctions upon Defendants, suggesting that the successive Rule 12 motion currently before the Court is an instrument of harassment and

delay. (Id.) Conversely, Defendants argue that by permitting Plaintiff to file her Second Amended Complaint, the Rule 12 clock has been reset. (Pl.'s Reply Br. Supp. Mot. Dismiss 4.) That is, Defendants assert that Plaintiff's December 30, 2009 filing had the effect of "mooting the initial Complaint and starting the clock for them to respond to the Second Amended Complaint." (Id.) Thus, the issue becomes whether the filing of an amended complaint starts the Rule 12(b) process anew.

In <u>Rauch v. Day & Night Manufacturing Corp.</u>, the Sixth Circuit explained that the purpose of Rule 12(g) is to "prevent the dilatory motion practice fostered by common law procedure . . . whereby numerous pretrial motions could be made, many of them in sequence, a course of conduct that often was pursued for the sole purpose of delay[.]" 576 F.2d 697, 701 n.3 (6th Cir. 1978). The <u>Rauch</u> court proceeded to hold that "[s]ubdivision (g) contemplates the presentation of an omnibus pre-answer motion in which defendant advances every Rule 12 defense and objection he may have that is assertable by motion." <u>Id.</u> Indeed, "a failure to assert [a particular] defense in a pre-answer motion to dismiss waives the right to raise the issue in a second pre-answer motion to dismiss." <u>English v. Dyke</u>, 23 F.3d 1086, 1090 (6th Cir. 1994). The Sixth Circuit, however, has not specifically considered the effect of an amended complaint on the principles articulated in the <u>Rauch</u> decision.

Where an amended complaint raises new claims that were not previously challengeable, it is undisputed that Rule 12(g) does not prevent a defendant from objecting to these claims in a successive Rule 12 motion. However, whether a defendant may—in a successive Rule 12 motion—raise a defense that could have been raised in the initial Rule 12 motion is not entirely clear. The majority of courts and commentators have taken the position that an unasserted defense available at the time of the initial Rule 12 motion may not be raised in a successive Rule

12 motion in response to an amended complaint. See Limbright v. Hofmeister, No. 5:09-cv-107-KSF, 2010 WL 1740905, at *2 (E.D. Ky. Apr. 27, 2010) (and authority cited therein). That is, if the defense existed at the time of the initial Rule 12 motion but was not timely asserted, the right to bring it via motion to dismiss is not revived merely because a pleading was amended.

At first blush, it appears as though Rule 12(g) requires the Court to accept Plaintiff's position and dismiss the Amtrak Defendants' second Rule 12 motion as procedurally improper. However, a line of precedent exists in which the district courts have been willing to overlook a 12(g) defect where doing so would better serve the purpose underlying subdivision (g). Where there is no evidence that a successive Rule 12 motion would create an unjust delay or facilitate an abuse in motion practice, courts have been willing to excuse 12(g) problems and address the merits of the defendant's motion to dismiss. See, e.g., FTC v. Innovative Mktg., Inc., 654 F. Supp. 2d 378, 384 (D. Md. 2009) (proceeding to the merits of a successive pre-answer 12(b)(6) motion because there was no indication that it was filed in order to delay the proceedings or inconvenience the plaintiff); Donelli v. Peters Sec. Co., No. 02-C-0691, 2002 WL 2003217, at *4 (N.D. Ill. Aug. 29, 2002) (same); Federal Express Corporation v. U.S. Postal Serv., 40 F. Supp. 2d 943, 949 (W.D. Tenn. 1999) ("allowing Defendant to file this motion will not create an unjust delay or facilitate an abuse in motion practice. Therefore, this court will proceed to address the merits Defendant's motion to dismiss."); Strandell v. Jackson County, Ill., 648 F. Supp. 126, 129 (S.D. Ill. 1986) ("the Court finds that defendants' motion is not interposed for delay and that disposition of the case will be expedited by reaching the merits of the defendants' motion."); N.Y. Dept. of Social Servs. v. Bethea, 523 F. Supp. 1193, 1196 n.1 (S.D.N.Y. 1981) ("this Court will entertain the [successive] motion because it was not interposed for delay, and its consideration will expedite the disposition of the case on the merits."); see also 2A James

Wm. Moore et al., Moore's Federal Practice ¶ 12.22, at 12-192 (2d ed. 1981) ("[a] Court might properly entertain [a] second motion [to dismiss] if convinced that it is not interposed for delay and that the disposition of the case on the merits can be expedited by so doing.").

In the instant matter, the Court finds that the Amtrak Defendants have a good faith basis for filing their successive Rule 12 motion. It cannot be said that the motion was intended for purposes of delay or harassment, particularly in light of the fact that the initial Rule 12 motion (filed in Missouri District Court) challenged only jurisdiction and venue. Indeed, adjudication of the instant motion will greatly expedite the resolution of the pending dispute. Accordingly, in the interest of promoting efficiency, the Court chooses to exercise its discretion and proceed to the merits of the Defendants' Motion to Dismiss. The general spirit of Rule 12(g) (and the Federal Rules of Civil Procedure in general) compels this result. Because the Court finds that the Defendants have acted in good faith, Plaintiff's (baseless) request for Rule 11 sanctions is denied.

### B. Plaintiff's Claims Under Titles II, III, and VI of the Civil Rights Act of 1964, and the Elliot Larsen Civil Rights Act

In support of her civil rights claims, Davis asserts that all of the alleged wrongful conduct stemmed from Defendants' desire to discriminate against African Americans. For the reasons that follow, Plaintiff has not adequately alleged the existence of racial discrimination, and therefore her civil rights claims cannot survive Defendants' Motion to Dismiss.

In Conley v. Gibson, the Supreme Court held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957). The Supreme Court's recent decisions in Twombly and Iqbal, however, explicitly abrogated *Conley*'s "no set of facts" standard. See Twombly, 550 U.S. at 563; Iqbal, 129 S. Ct. at 1944. As such, the

8

pre-Twombly precedent relied on by Plaintiff is inapposite. Even *pro se* litigants are required to meet the base requirements of Rule 8 as interpreted by the Supreme Court. Accordingly, Plaintiff, like all other litigants, is required to "state claims that are more than bare assertions of legal conclusion." Raimondo v. Village of Armada, 197 F. Supp. 2d 833, 841 (E.D. Mich. 2002). This Plaintiff has failed to do.

It is unclear whether Plaintiff's Complaint could have survived a motion to dismiss under Conley's more liberal "no set of facts" standard; it is, however, certain that, under Twombly and Iqbal, Plaintiff's discrimination claims must fail. The Plaintiff in the instant dispute has leveled precisely the type of "defendant-unlawfully-harmed-me accusation[,]" Iqbal, 129 S. Ct. at 1949, that the Iqbal Court sought to prohibit. In order to prevail under Titles II, III, and VI of the Civil Rights Act of 1964 and the Elliot Larsen Civil Rights Act, the Plaintiff is required to adequately allege that the Amtrak Defendants discriminated against her because of her race. Plaintiff's Complaint contains mere conclusory allegations that her car was towed in an effort to harm her because of her status as an African American woman. Under Iqbal, the Court is not required to accept these bare assertions as true. Iqbal, 129 S. Ct. at 1951.

According to Plaintiff, the mere fact that her car was only towed after the Defendants (allegedly) discovered her race is sufficient evidence of invidious discrimination. Plaintiff's Complaint essentially assumes that merely because all of the Defendants are Caucasian, and she is African American, the purported wrongful conduct was racist and discriminatory in nature. This allegation simply does not create an inference strong enough to "nudge [her] claim of purposeful discrimination across the line from conceivable to plausible." Id. at 1952. Moreover, Plaintiff fails to allege any facts suggesting that any non-African-Americans were treated differently vis-à-vis the parking lot. Because Plaintiff has failed to plead facts sufficient to

"raise a right to relief above the speculative level[,]" Twombly, 550 U.S. at 555, all of her civil rights claims are facially deficient under the principles articulated in Twombly and Iqbal. Even *pro se* claims must be dismissed where, as here, they simply do not entitle the litigant to relief.

Furthermore, with respect to Plaintiff's Title III claim, The Court is not aware of any precedent that suggests that a private individual has any right to sue under Title III. To the contrary, the existing case law seems to suggest that Title III only authorizes actions by the Attorney General, and not private plaintiffs. See, e.g., Hoffman v. Wilcox, No. 06-5073, 2006 WL 165784, at *2 (W.D. Ark. June 13, 2006) ("a private citizen may not bring a cause of action under [Title III of the Civil Rights Act of 1964]"); Booker v. Anderson, 83 F.R.D. 284, 291 (D.C. Miss. 1979) (Title III claim denied on the grounds that it authorizes actions by the Attorney General, not private plaintiffs); Lyle v. Village of Golden Valley, 310 F. Supp. 852, 854 (D.C. Minn. 1970) (holding that Title III does not create a private right; rather, it merely states that no remedy shall be taken away).

    **C.**    **Plaintiff's Remaining Federal Law Claims**

        *1.*    *Plaintiff's Claim Under the Federal Freedom of Information Act*

In order to state a claim under the Federal Freedom of Information Act ("FOIA"), a plaintiff must allege that (1) she made a FOIA request; (2) the records requested fall within the purview of the statute; and (3) she has exhausted the available administrative remedies prior to brining an action in federal court.

Here, Plaintiff's Complaint does not make the threshold allegation that she made a FOIA request to Amtrak. Nor does Plaintiff allege that any records she may have requested fall within the purview of the statute. Moreover, Plaintiff has not alleged that she exhausted the available

administrative remedies under FOIA before filing the instant action. Plaintiff has therefore failed to state a valid FOIA claim.

> 2. *Plaintiff's Claims Under 42 U.S.C. § 1983 and the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution*

"A § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003). Here, Plaintiff's § 1983 claims must fail because she has not adequately alleged that the Amtrak Defendants did anything to deprive her of a right that is secured by the laws of the United States. In other words, Plaintiff fails to satisfy the first element of the above stated two-prong test.

In support of her § 1983 claim, Plaintiff argues that her car was unreasonably seized in violation of the Fourth Amendment and sold without due process of law in violation of the Fifth and Fourteenth Amendments. However, Plaintiff fails to allege facts implicating the Amtrak Defendants in the purported wrongdoing. The bare accusations of conspiracy are, as a matter of law, see Twombly, 550 U.S. at 557, insufficient to implicate the Amtrak Defendants in the alleged deprivation of constitutional rights. In an attempt to implicate the Amtrak Defendants in the alleged unconstitutional conduct, the Plaintiff claims that "Defendant Hardy gave a pretextual reason to enable the [Dearborn Defendants to tow her vehicle]" and that "Defendant Hardy instructed the Defendant Dearborn Police Department to tow [her] vehicle." (Pl.'s Resp. Br. Opp. Def.'s Mot. Dismiss 6.) Although this alleged conduct is inappropriate to be sure, it could not have violated Plaintiff's constitutional rights for several reasons.

First, Plaintiff does not allege that Hardy seized the vehicle in violation of her Fourth Amendment rights; rather, she merely suggests that Hardy ordered the Dearborn Police to seize the car. The Dearborn Police Department is not under any obligation to take orders from a

manager at a local Amtrak station. Rather, the Police Department is obligated to make an independent assessment of a given situation before it acts. The fact that Hardy requested the towing is simply irrelevant, as Plaintiff has not alleged that Hardy had the authority to control the actions of the Dearborn Police Department.

Likewise, Davis has failed to allege that the Amtrak Defendants were involved in the unconstitutional sale of her vehicle. In fact, Plaintiff openly admits that it was David that sold her vehicle. (See id. at 7.) Accordingly, Plaintiff can have no claim for deprivation of property without due process of law against the Amtrak Defendants.

In sum, Plaintiff does not allege that the Amtrak Defendants had anything to do with the actual seizure and subsequent sale of her vehicle. The mere fact that Hardy requested that the vehicle be towed is insufficient because Plaintiff has not alleged facts suggesting that the Dearborn Defendants were obligated to follow Hardy's instructions. Because Plaintiff has failed to allege facts implicating the Amtrak Defendants in the alleged unconstitutional seizure and sale of her vehicle, her Fourth, Fifth, and Fourteenth Amendment Claims must fail. It follows, then, that her § 1983 claim—which wholly depends on the validity of her constitutional claims—must fail as well.

### 3. *Plaintiff's Section 1985 Claim*

In order to maintain a cause of action under 42 U.S.C. § 1985, a plaintiff must allege the existence of a conspiracy. And, under Twombly and Iqbal, conclusory allegations and conclusions of law are simply insufficient. Indeed, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 554.

In her response brief, Plaintiff states that "Defendants David and Hardy coordinated and conspired together to make false statements on the police report and to their supervisors

regarding the facts surrounding the tow, impoundment and sale of [the] vehicle." (Pl.'s Resp. Br. Opp. Def.'s Mot. Dismiss 6.) This naked assertion constitutes a legal conclusion, and therefore is not entitled to a presumption of veracity. See Twombly, 550 U.S. at 554. Plaintiff alleges no other facts or circumstances tending to prove the existence of a conspiracy. As such, Plaintiff fails to adequately plead the existence of a conspiracy pursuant to the Twombly and Iqbal decisions, and therefore she has no tenable claim under § 1985.

### D. Plaintiff's Remaining State Law Claims

#### 1. *Plaintiff's Claim Under Article XI of the Michigan Constitution*

Article XI of the Michigan Constitution deals exclusively with the terms of employment of the State of Michigan's public officers. Assuming, *arguendo*, that it creates a private right of action, it nevertheless has no application in the instant case.

#### 2. *Plaintiff's Claim Under Article XVII of the Michigan Constitution*

There is no Article XVII in the Michigan Constitution. The Plaintiff—presumably aware of this fact after reading the Defendants' brief—has failed to inform the Court of any proposed corrections. As such, the Court will not speculate as to the intended provision of the Michigan Constitution.

#### 3. *Plaintiff's Claim Under the Michigan Freedom of Information Act*

The basic purpose of the Michigan Freedom of Information Act is to regulate and set requirements for the disclosure of public documents by all "public bodies" in the state. See Mich. Comp. Laws § 15.233(1). Amtrak is not a public body within the meaning of the statutory language, see Mich. Comp. Laws 15.232(d)(i)-(v), and therefore the Plaintiff can have no claim under this law against the Amtrak Defendants.

#### 4. *Plaintiff's Claim Under the Michigan Open Meetings Act*

Mich. Comp. Laws § 15.263 requires Michigan public bodies to conduct nearly all business at open meetings. Plaintiff has no claim against the Amtrak Defendants under this law, as it is plainly inapplicable.

5. *Plaintiff's Claim for Intentional Infliction of Emotional Distress*

Under Michigan law, a prima facie Intentional Infliction of Emotional Distress ("IIED") case consists of four critical elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Hayes v. Langford, 767 N.W.2d 436, 437 (Mich. 2009) (analysis originally adopted in Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908 (Mich. 1985)) (internal quotation marks omitted). The first element of the prima facie case will be satisfied "only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Graham v. Ford, 604 N.W.2d 713, 716 (1999). The Michigan Supreme Court has acknowledged that this "understanding of 'extreme and outrageous conduct' sets a high threshold for such conduct, which is not met by mere 'inconsiderate and unkind' behavior." Hayes, 767 N.W.2d at 437 (quoting Roberts, 374 N.W.2d at 909).

In the instant case, the complained of conduct, accepted as true, can simply not be deemed "tortiously outrageous" in violation of the first prong of the above-stated test. Indeed, the Michigan courts have held that more egregious conduct did not constitute "extreme and outrageous conduct" for purposes of Michigan IIED law. See, e.g., Duran v. Detroit News, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993) (Defendant Newspaper published article publicizing plaintiffs' location in Detroit when there where death threats against them). The complained of conduct falls within the category of "mere insults, indignities, threats, annoyances, petty

14

oppressions, or other trivialities[,]" Roberts, 374 N.W.2d at 909, and therefore Plaintiff has failed to state a claim for IIED.

### 6. *Plaintiff's Conversion Claim*

Pursuant to Michigan law, "common law conversion is any distinct act of dominion wrongfully exerted over another person's personal property." Pamar Enters. Inc. v. Huntington Banks of Mich., 580 N.W.2d 11, 15 (Mich. Ct. App. 1998). Therefore, to raise a conversion claim, a plaintiff must make the essential allegation that, at some point, the defendant wrongfully possessed or controlled the personalty at issue.

In the instant case, Plaintiff fails to allege facts indicating that the Amtrak Defendants exercised dominion or control over the vehicle in any way. Davis alleges only that the Amtrak Defendants urged a third party to exercise control over the vehicle. This allegation is insufficient to support a claim for conversion.

### 7. *Plaintiff's Claim for Negligent Hiring, Supervision, and Training*

In order to sustain a cause of action for the tort of negligent supervision, a plaintiff is required to demonstrate that the complained of employee conduct in and of itself constituted an actionable tort. See Smith v. Merrill Lynch, 399 N.W.2d 481, 484 (Mich Ct. App. 1986). In the instant action, all of the claims leveled against the Amtrak Defendants have been dismissed. Because no further tortious conduct has been alleged, Davis is unable to prove that Hardy's conduct constituted an independently actionable tort. Accordingly, Plaintiff has no claim for negligent supervision.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **GRANTED**.

                                                    s/Marianne O. Battani
                                                    MARIANNE O. BATTANI
                                                    UNITED STATES DISTRICT JUDGE

DATED: September 2, 1001

## CERTIFICATE OF SERVICE

Copies of this Order were served upon Plaintiff, and counsel of record on this date by ordinary mail and electronic filing.

                                                    s/Bernadette M. Thebolt
                                                    CASE MANAGER