**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

YANCY D. DAVIS,

        Plaintiff,

v.

DEARBORN, CITY OF, et al.,

        Defendant.
_____/

Case No. 2:09-CV-14892

HON. MARIANNE O. BATTANI

**ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION,
TO ALTER OR AMEND, AND/OR FOR RELIEF**

Before the Court is Plaintiff Yancy D. Davis' Motion for Reconsideration, to Alter or Amend, and/or for Relief (Doc. No. 41). The Court has reviewed all the pleadings and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(e)(2). For the reasons discussed below, the Court **DENIES** Plaintiff's motion.

**I. BACKGROUND**

Davis asks the Court to reconsider its Opinion and Order Granting Defendants Amtrak and Hardy's (hereinafter the Amtrak Defendants) Motion to Dismiss for Failure to State a Claim. Davis brought claims against these Defendant for their role in the "wrongful conversion and unconstitutional taking of [her] 1998 Mercedes Benz." Doc. No. 41 at 1. She asserts that the Court misapplied the law in considering the merits and denied her the opportunity to cure any defects in her complaint. Because Plaintiff also filed a separate motion for leave to file a third amended complaint (see Doc. No. 40), the Court limits its consideration to the issues raised relative to reconsideration.

1

The summary of her discontentment with the Court's decision is taken from her conclusion.

> Based on the facts stated in my complaint that Defendant Hardy had my car impounded after he knew or had reason to know that I owned it (based on my calls and messages), lied about the reasons he had it towed on a police report and to his supervisors, intentionally ignored my calls after he had it towed that prevented me from recovering my car before his Co-Defendant David, next door at the Dearborn Police Department's auto impound, illegally sold it, Hardy denying any knowledge about my car or its whereabouts to me only to later admit his role and responsibility after his Co-Defendant David confirmed that the Dearborn Police would not have removed the car had Hardy not "personally requested" it be removed from the parking lot and Hardy's boss at Amtrak taking Hardy for his word and Amtrak's legal department refusing to handle my discrimination grievance against Hardy following the procedures required by the federal consent decree in the Parker v. National Railroad Passenger Corp., 1:03-CV-00759-PLF. I/S/ Dost/. 2005 (D. DC November 3, 2005) by which Amtrak was bound at the time; a reasonable jury could find that these Defendants, as government/state actors, are liable to me for my claims for the wrongful conversion and unconstitutional taking of my car.

Doc. No. 41 at 15.

## II. STANDARD OF REVIEW

Pursuant to E.D. Mich. LR 7.1(g)(3), to obtain the requested relief, the movant must demonstrate: (1) the Court and the parties have been misled by a palpable defect, and (2) the correction of that defect will result in a different disposition of the case. A "palpable defect" is an error which is obvious, clear, unmistakable, manifest or plain. Fleck v. Titan Tire Corp., 177 F. Supp.2d 605, 624 (E. D. Mich. 2001); Marketing Displays, Inc. v. Traffix Devices, Inc., 971 F. Supp. 262, 278 (E. D. Mich. 1997) (citation omitted).

2

## III. ANALYSIS

At the outset the Court observes that proper consideration of the Amtrak Defendants' motion to dismiss required that Plaintiff's complaint, which was filed *pro se,* to be construed "liberally," however inartfully pleaded.'" Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal citations omitted). Even under the liberal standard, Plaintiff has failed to demonstrate that dismissal was inappropriate.

According to Plaintiff, the Court erred in dismissing the Amtrak Defendants because they are just as liable as their Codefendants for the seizure and sale of her car. Plaintiff's own allegations in the Second Amended Complaint undermine her theory of liability. Despite Plaintiff's assertion that she parked the car legally, there is no dispute that at the time the Dearborn Police Department became involved, the car was illegally parked, and lacked a license plate. See Doc. No. 24, Ex. 2. Davis has no knowledge as to what happened to her car from the time she parked it until the time it was impounded because she was in Missouri caring for her mother. Plaintiff theorizes that Hardy had the car towed after learning that an African American owned it, yet there are no factual allegations other than Plaintiff's own speculation to support her contention that Hardy was motivated by animus. In her motion for partial summary judgment she states that after confronting Hardy as to why he had not returned Plaintiff's phone calls, he replied that his priority was to the passengers in front of him, not to persons on the phone. Davis then realized that "Hardy only had [her] vehicle towed, ignored [her] calls and talked to [her] so rudely and unprofessionally because [she] was African American.

Doc. No. 21 at 10. Davis contends that Hardy should have called her to inform her of what happened and what she needed to do to get her car returned.

Davis acknowledges that her car was parked at the Amtrak station for ten weeks, well in excess of the statutory guideline for abandonment of a vehicle. Assuming that Hardy initiated the impoundment by calling the Dearborn Police Department, that Hardy ignored Plaintiff's calls to Amtrak and never told her that the car had been impounded, his rude behavior and lack of consideration fail to raise a cause of action under 42 U.S.C. § 1983. Her claims all build on her mistaken belief that the impoundment was unlawful.

In addition, Davis challenges the Court's conclusion that Hardy did not exercise dominion and control over her car, and, therefore, could not be held liable for conversion. She characterizes Hardy's phone call to the police after he discovered Davis owned the car as dominion and control over the vehicle and as a constructive conveyance of her property to the Dearborn Defendants.

Davis cited no legal authority for her position, and the Court rejects the characterization. Plaintiff analogizes her situation to one in which an innkeeper enters an occupied room while the guests are at the pool, takes a ring and gives it to his wife. The fact that the wife does not know that the ring has been converted does not alter the innkeeper's liability. Here, the analogy fails because Davis' car was abandoned and the seizure complied with the statute.

Finally, Plaintiff reiterates her allegations that the conduct at issue states a claim for intentional infliction of emotional distress. Because her arguments for reconsideration merely rehash the arguments she advanced in the response to the

motion to dismiss, the Court finds they fail to demonstrate a palpable defect by which the Court has been misled.

## IV. CONCLUSION

The Court therefore concludes that Plaintiff's request for reconsideration must be **DENIED.**

**IT IS SO ORDERED.**

                              s/Marianne O. Battani
                              MARIANNE O. BATTANI
                              UNITED STATES DISTRICT JUDGE

DATED: December 3, 2010

## CERTIFICATE OF SERVICE

Copies of this Order were served upon plaintiff and counsel of record on this date by ordinary mail and/or electronic filing.

                              s/Bernadette M. Thebolt

                              Case Manager