UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YANCY D. DAVIS,

        Plaintiff,

v.

DEARBORN, CITY OF, et al.,

        Defendant.

_____/

Case No. 2:09-CV-14892

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS CITY OF DEARBORN POLICE DEPARTMENT AND DENNIS DAVID'S CROSS MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendants City of Dearborn, Dearborn Police Department, and Dennis David's (collectively "Dearborn Defendants") Cross-Motion for Summary Judgment (Doc. No. 24). The Court has reviewed all the pleadings and finds oral argument will not aid in the resolution of this dispute. See E. D. Mich. LR 7.1(e)(2). For the reasons discussed below, the Court **GRANTS in part and DENIES in part** Dearborn Defendants' motion.

**I. STATEMENT OF FACTS**

In her Complaint, Plaintiff Yancy Davis alleges violations of state and federal law in connection with the impoundment and subsequent sale of her 1998 Mercedes Benz. Davis filed suit against the City of Dearborn, the Dearborn Police Department, Officer Dennis David, the National Railroad Passenger Corporation ("Amtrak"), and Amtrak employee Dan Hardy (collectively "the Amtrak Defendants"). The Court dismissed the Amtrak Defendants. See Doc. No. 37.

The facts giving rise to Plaintiff's claims follow. On September 1, 2007, Davis parked her vehicle in a parking lot at the Amtrak station located in Dearborn, Michigan. Pl.'s Second Am. Comp. (SAC), ¶ 13. Plaintiff alleges that the car, which had a valid Missouri license plate, was parked legally. Id. Plaintiff left her car parked in the lot longer than she had expected, (Id. ¶ 19), and at the end of October, she telephoned Amtrak and left a voice mail message about her car. Davis claims that between October of 2007 and January of 2008, she left twenty to thirty messages notifying Amtrak employees of her unforeseen delay, and identifying the vehicle and its location. Id. ¶¶ 19-21.

On November 9, 2007, Officer Gwizdz of the Dearborn Police Department responded to a radio call regarding an abandoned vehicle parked in the Amtrak parking lot. Defs.' Exs. A and B. An Amtrak employee told the officer that the vehicle was parked in a marked "zebra zone" for approximately three weeks, and had been interfering with bus traffic in front of the station. Doc. No. 24, Ex. A. Gwizdz chalked and tagged the vehicle, which had no license plate. He returned on November 12, 2007, and found that the vehicle had not been moved. He issued an abandoned vehicle citation, completed paperwork, and forwarded the information to facilitate notification by the Secretary of State. Id. According to the report, another parking ticket had been issued sometime in October, but because the writing had faded, an exact date was not ascertained. Id. Gwizdz also sent a citation to the last registered owners, Ana and John Onan.

The Auto Pound Coordinator for the Dearborn Police, Defendant David, received notice from the State of Michigan authorizing him to arrange the public auction of the

vehicle. Doc. No. 24, Exs. C, D. The Secretary of State's records showed "no ownership information. Doc. No. 24, Ex. A. David also asserts that after he conducted a law enforcement information network (LEIN) search for ownership information in all states in the Midwest region, he discovered the Onans and sent a letter to them on November 19, 2007. Another officer subsequently informed David that the Onans had contacted the Dearborn Police in response to the letter, stating that they no longer owned the vehicle. Doc. No. 25, Ex. H.

David then placed a public notice of the sale in the Dearborn Press and Guide newspaper on December 16, 2007. VIP Auto Sales purchased the Mercedes for $3,525 at the public auction held December 20, 2007. Doc. No. 24, Ex. I. Because towing and storage costs for the vehicle amounted to $580, David sent a letter to Onans on January 10, 2008, informing them of the overbid and the availability of the proceeds if they provided proper documentation of ownership.

Plaintiff contends that after Hardy, a manager at the Dearborn Amtrak station, discovered that she is an African American woman, (SAC ¶ 39), he submitted a falsified police report urging the Dearborn Police Department to tow and impound Plaintiff's vehicle. Id. ¶ 42. According to the Second Amended Complaint, at Hardy's request, in mid-November, the Dearborn Defendants unlawfully and with discriminatory motives towed and impounded her vehicle, which was sold at auction on December 20, 2007. Id. ¶¶ 45, 55. Plaintiff contends that David actually discovered she was the registered owner, but circumvented the law by sending notice to the previous owners. Id. ¶ 60.

Plaintiff called the mayor of Dearborn to file a complaint against Officer David on February 19, 2008. She was asked to fax a copy of the title and insurance to Michael

3

O'Leary, a police corporal assigned to the Mayor's Office. SAC ¶ 63. O'Leary then called Plaintiff and told her that after speaking to David at length regarding the incident, "everything was in order." SAC ¶ 64.

Plaintiff then sent a Freedom of Information Act (FOIA) request to the City; had an attorney sent a request, and contacted the legal department about the incident. In May 2008, the City sent the proceeds from the auction to ELOAN, which holds a lien on the vehicle. SAC ¶ 93. She filed suit on July 27, 2009.

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

### III. ANALYSIS

#### A. 42 U.S.C. § 1983

Section 1983 does not provide for substantive rights; it is "a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266 (1994). In reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983.

To plead a § 1983 violation, a plaintiff must allege facts from which it may be inferred that (1) she was deprived of a federal right, and (2) the person who committed the alleged violation acted under color of state law. West v. Atkins, 487 U.S. 42, 28 (1988).

With respect to the "color of state law" issue, an official is acting under the color of state law if, and only if, the alleged misconduct is "related in some meaningfully way either to the actor's governmental status or to the performance of his duties. " Id. In this case, there is no dispute regarding the status of the Dearborn Defendants; therefore, the Court addresses whether Plaintiff suffered a deprivation of a right secured by the Constitution.

In support of her § 1983 claim, Plaintiff argues that her car was unreasonably seized in violation of the Fourth Amendment and sold without due process of law in violation of the Fourth and Fourteenth Amendments. The Fourteenth Amendment

5

provides in relevant part: "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 11  Because the Fourth Amendment standard of reasonableness applied to challenges to a seizure in a civil context requires no more of government officials than that of due process of law, no separate analysis is required.  See Flatford v. City of Monroe, 17 F.3d 162, 269 (6th Cir. 1994) (citations omitted).

A court examines procedural due process claims in two steps: it "first asks whether there exists a liberty or property interest which has been interfered with by the State;" and then "examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989).  In resolving the procedural due process claim, the first issue considered by the Court is whether Plaintiff was deprived of a property interest.  Property rights are created and defined not by the Constitution, but by independent sources such as state law.  Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002) (citations omitted). Here there is no dispute that Plaintiff had a property interest in her vehicle.  Accordingly, the Court considers the process by which Plaintiff's car was seized and sold.

In the Sixth Circuit, a plaintiff states a § 1983 procedural due process claim through one of two methods: "(1) [by] demonstrating that [s]he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived h[er] of property pursuant to a 'random and unauthorized act' and that available state remedies would not adequately compensate for the loss." Macene v. MJW, Inc., 951 F.2d 700, 706 (6th Cir. 1991) (quoting Collins v. Nagle, 892 F.2d 489, 497 (6th Cir.1989)).  Dearborn Defendants' request for summary

judgment is based on their assertion that they complied with the state abandoned vehicle statute. Consequently, the Court turns its attention to statutory requirements.

The Michigan Vehicle Code governs the process for the removal of abandoned vehicles and their disposition. MICH. COMP. LAWS § 257.252a, et seq. Included in the statutory definition of an abandoned vehicle is one "that has remained on public property for a period of not less than 48 hours." MICH. COMP. LAWS § 257.252a(2)(b).

Here, there is no question that Plaintiff's car remained on public property for the required time. Consequently, the Dearborn Police as the "police agency having jurisdiction over the vehicle" must check whether the vehicle has been reported stolen and may affix a written notice to the vehicle identifying when the notice was placed on the vehicle, and information about the police agency and the individual officer. Id.

The statute likewise governs what needs to be done if an abandoned vehicle is taken into custody. One requirement is that the vehicle be entered in the law enforcement information network, and the secretary of state be notified that the vehicle has been taken into custody as abandoned. MICH. COMP. LAWS § 257.252a(5). The statute also specifies that the Secretary of State must send notice that the vehicle is considered abandoned to the last titled owner and secured party, as shown by the records of the secretary of state. . .by first-class mail or personal service. . . ." MICH. COMP. LAWS § 257.252a(12)(a).

Therefore, the Dearborn Defendant had no statutory duty to notify Davis that her car was abandoned; that duty belongs to the Secretary of State. Nevertheless, Dearborn Defendants fail to show they complied with the statute relative to the sale of the vehicle.

7

Under § 257.252a(17), when the ownership of a vehicle cannot be established "with the records of the secretary of state. . .the police agency may sell the vehicle at public sale as provided. . .not less than 30 days **after public notice of the sale has been published**. Dearborn Defendants alter the public notice language and base their assertion of compliance on the fact that the vehicle was sold not less than thirty days after the Secretary of State issued notice that the vehicle was abandoned. Doc. No. 24 at 13. The plain language of the statute requires a waiting period not after the discovery by the Secretary of State that the records contain no owner information, but after publication in the newspaper. In this case, Dearborn Defendants did not comply with the thirty day requirement. Notice was published on December 16, 2007, and the sale was held December 20, 2007. Accordingly, they have failed to sustain their burden to show entitlement to summary judgment based on their position that they complied with the statute.

Nevertheless, to prevail on her procedural due process claim, Davis must show either that statute itself violates due process rights, or "that the defendants deprived [her] of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss." Macene, 951 F.2d at 706; (internal quotation marks omitted); see also Mitchell v. Fankhauser, 375 F.3d 477, 481-84 (6th Cir. 2004) (stating that a plaintiff must plead the inadequacy of state remedies when an alleged due process violation involves a random or unauthorized act).

Although Plaintiff does not specify in her Second Amended Complaint or her responsive pleading the precise nature of her claim, in her responsive pleadings,

Plaintiff notes the ease with which ownership could have been discovered given the availability of the information through Carfax and Experian. Plaintiff also asserts that the vehicle contained numerous identifying documents and items, including her title registration or proof of insurance. See Citifinancial Auto, Inc. v. Mike's Wrecker Service, Inc., 206 P.3d 63 (Kan. Ct. App. 2009) (discussing what evidence would have been relevant for determining whether the defendant's efforts were reasonably calculated, under all the circumstances, to notify the plaintiff of the sale). To the extent that Plaintiff is bringing a challenge based on the statutory notice provision, she has failed to comply with the Special Rules of Pleading. E. D. Mich. LR 9.1(b). Therefore, the Court assumes she is proceeding based on David's conduct and considers whether David's "random and unauthorized act" relative to the sale deprived Plaintiff of her property.

Here, Plaintiff's theory is that David conspired with Hardy to acquire her vehicle; yet, she has neither alleged nor provided any evidence regarding the adequacy of state remedies. This is a necessary element of her claim. Jefferson v. Jefferson County Pub. Sch. Sys., 360 F.3d 583, 587-88 (6th Cir. 2004). See Rothhaupt v. Maiden, No. 04-5868, 2005 WL 1704944 at *6 (6th Cir. July 20, 2005) (affirming the dismissal of the plaintiff's due process claims where the plaintiff failed to explain why a state tort remedy for conversion would not suffice to address his claim). Because Plaintiff has failed to plead or prove that state damage remedies are inadequate to redress her injury, as required, the Court grants summary judgment on the procedural due process claim. Vicory v. Walton, 721 F.2d 1062 (6th Cir. 1983).

In addition, Plaintiff's claim fails because she failed to advance evidence of a causal relationship between Dearborn Defendant's conduct and the injury she suffered.

See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person deprives another of a federal right "if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do so that it causes the deprivation of which complaint is made"). "An injury is proximately caused by an act when it appears from the evidence in the case that the defendant's conduct was a substantial factor in bringing about the plaintiff's harm and no rule of law relieves the defendant from liability because of the manner in which his conduct resulted in the harm." Restatement (Second) of Torts § 431 (1965). Here, although Plaintiff's car was sold before the thirty day public notice period expired, she never contacted Dearborn Defendants until several weeks after the time in which the sale would have complied with the statute. Specifically, the notice was published on December 16, 2007, and the car was sold on December 20, 2007. Even if the car had not been auctioned until January 20, 2008, Davis did not discover her car had been seized until February 19, 2008. The premature auction did not cause her loss; her own inaction did.

Lastly, Dearborn Defendants move for dismissal of the City. To succeed on a failure-to-train claim under Monell v. Dep't of Soc. Serv. of City of New York, 436 U.S. 658, 691 (1978), Davis must prove that the City ignored prior instances of unconstitutional conduct demonstrating that the City was on notice that David's training was deficient and likely to cause injury. Berry v. City of Detroit, 25 F.3d 1342, 1354 (6th Cir. 1994) (citing City of Canton v. Harris, 489 U.S. 378 (1989)). She has offered no evidence. In the alternative, liability would attach where "an official responsible for establishing final policy with respect to the subject matter in question" makes a

"deliberate choice to follow a course of action" from various alternatives. Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). There is no support for a conclusion that David was a policy maker; therefore, based on the evidence in this case, the Court finds the City of Dearborn was neither the moving force behind the challenged conduct or deliberately indifferent to the need to train David.

### B. Section 1985 Claim

In the Court's Order granting Amtrak's motion to dismiss, the Court found Plaintiff's allegations of conspiracy under 42 U.S.C. § 1985, failed to state a claim. The analysis is incorporated here, and the Court finds Dearborn Defendants likewise are entitled to dismissal of this claim.

### C. Conversion

Davis alleges that the Dearborn Defendants exercised acts of wrongful dominion over her vehicle by seizing and selling her car. Pursuant to Michigan law, "common law conversion is any distinct act of dominion wrongfully exerted over another person's personal property." Pamar Enters. Inc. v. Huntington Banks of Mich., 580 N.W.2d 11, 15 (Mich. Ct. App. 1998). Therefore, to raise a conversion claim, a plaintiff must make the essential allegation that, at some point, the defendant wrongfully possessed or controlled her vehicle.

Statutory conversion allows treble damages plus costs and attorney fees for "[a]nother person's stealing or embezzling property or converting property to the other person's own use." MICH. COMP. LAWS § 600.2919a.

Dearborn Defendants argue that they did not wrongfully seize or impound Plaintiff's vehicle inasmuch as David complied with the state statute. The Court agrees;

11

however, Davis has stated a claim relative to the sale. Simply put, David failed to follow the statutory requirements under the motor vehicle statute relative to the sale of an abandoned vehicle with no ownership information. Therefore, the Dearborn Defendants are not entitled to summary judgment on Plaintiff's conversion claim.

**D. Discrimination Claims Under Titles II, III, and VI of the Civil Rights Act of 1964, and the Elliot Larsen Civil Rights Act**

In support of her civil rights claims, Davis asserts that all of the alleged wrongful conduct by Dearborn Defendants stemmed from their desire to discriminate against her based on her race. Her claims fail for the reasons discussed below.

**1. Title II**

Title II of the Civil Rights Act, 42 U.S.C. § 2000a et seq., prohibits discrimination on the basis of race in places of public accommodations. 42 U.S.C. § 2000a(a). Section 2000a(b) lists places of public accommodation covered by the statute, which fall primarily within three categories: (1) inns and hotels, (2) restaurants and lunch counters, and (3) theaters and places of exhibition or entertainment. Id. § 2000a(b)(1)-(3). A fourth category extends coverage to:

> [a]ny establishment (A)(i) which is physically located within the premises of any establishment otherwise covered by this subsection, or (ii) within the premises of which is physically located any such covered establishment, and (B) which holds itself out as serving patrons of such covered establishment.

A parking lot is not a place of public accommodation within the meaning of Title II. Accordingly, the Court grants summary judgment to Dearborn Defendants on the Title II claim.

### 2. Title III

With respect to Plaintiff's Title III claim, The Court is not aware of any precedent that suggests that a private individual has any right to sue under Title III. Under existing case law, Title III, 42 U.S.C. §2000b-2, only authorizes actions by the Attorney General, and not private plaintiffs. See, e.g., Hoffman v. Wilcox, No. 06-5073, 2006 WL 165784, at *2 (W.D. Ark. June 13, 2006) ("a private citizen may not bring a cause of action under [Title III of the Civil Rights Act of 1964]"); Booker v. Anderson, 83 F.R.D. 284, 291 (D.C. Miss. 1979) (Title III claim denied on the grounds that it authorizes actions by the Attorney General, not private plaintiffs); Lyle v. Village of Golden Valley, 310 F. Supp. 852, 854 (D.C. Minn. 1970) (holding that Title III does not create a private right; rather, it merely states that no remedy shall be taken away). Therefore, Dearborn Defendants are entitled to dismissal of this claim.

### 3. Title VI

Finally, Title VI, 42 U.S.C. § 2000d, provides, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Again, Plaintiff had advanced no allegations as to how Dearborn Defendants violated this statute. Accordingly, their motion is granted as to this claim.

### 4. Elliott Larsen

The parties also disagree as to viability of Plaintiff's claim of racial discrimination under state law. Article 3 of the Elliott-Larsen Civil Rights Act prohibits the denial of "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or

accommodations of a place of public accommodation or public service because of religion, race, color, national origin, age, sex, or marital status." MICH. COMP. LAWS § 37.2302(a).

Although Plaintiff alleges that her car was towed only after Hardy discovered her race, her Second Amended Complaint contains no factual allegations showing Dearborn Defendants were aware of her race. Karoumi v. TJ Maxx, 408 F. Supp.2d 454, 462 (E. D. Mich. 2005) (dismissing a discrimination claim because given the absence of facts alleging that defendant was aware of the plaintiff's national origin). Her assumption that David discovered her race when conducting a LEIN search simply does not create an inference strong enough to "nudge [her] claim of purposeful discrimination across the line from conceivable to plausible." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1952 (S. Ct. 2009). In addition, Plaintiff fails to allege any facts suggesting that any non-African-Americans were treated differently relative to the abandoned vehicle statute.

In sum, Davis has leveled precisely the type of "defendant-unlawfully-harmed-me accusation[,]" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (S. Ct. 2009), that the Supreme Court now prohibits. Plaintiff's Second Amended Complaint contains mere conclusory allegations that her car was towed in an effort to harm her because she is an African American. Under Iqbal, the Court is not required to accept these bare assertions as true. Iqbal, 129 S. Ct. at 1951. Accordingly, the claim must be dismissed.

### D. Freedom of Information Act Claims

On March 25, 2008, Plaintiff asked for copies of "any and all documentation regarding the impound and sale" of the Mercedes. Doc. No. 35, Ex. K. The Freedom of Information Act (FOIA) Coordinator for the City of Dearborn, Laurie Ellerbraide, sent

14

Plaintiff eight pages of documents, but Plaintiff asserts that she did not receive all the information she requested.

Because the federal Freedom of Information Act, 5 U.S.C. § 552, applies only to federal agencies, see St. Michael's Convalescent Hospital v. California, 643 F.2d 1369 (9th Cir. 1981), the claim fails as a matter of law.

As for her state FOIA claim, Plaintiff alleges that Ellerbraide ignored all or part of the requests to hide David's conduct. Ellerbraide has submitted an affidavit in which she attests that she did not withhold any document. Doc. No. 24, Ex. O. There is no dispute that Plaintiff did receive documents. FOIA "does not require that information be recorded, only that if recorded, it must be disclosed." Bredemeier v. Kentwood Bd. of Educ., 291 N.W.2d 199 (Mich. Ct. App. 1980). To the extent that Plaintiff bases her claim on the fact that the City provided additional documentation in response to a request made by an attorney on behalf of Davis, the Court notes that the attorney's request specified eight categories of information. Doc. No. 35, Ex. K. Plaintiff has not identified any documentation that was not provided and should have been relative to her initial request. Accordingly, the claim fails as a matter of law.

### E. Intentional Infliction of Emotional Distress

Under Michigan law, a prima facie Intentional Infliction of Emotional Distress ("IIED") case consists of four critical elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Hayes v. Langford, 767 N.W.2d 436, 437 (Mich. 2009) (analysis originally adopted in Roberts v. Auto-Owners Ins. Co., 374 N.W.2d 905, 908 (Mich. 1985)) (internal quotation marks omitted). Michigan courts have elaborated on the first element:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice', or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

Margita v. Diamond Mortgage Corp., 159 Mich.App. 181, 188, 406 N.W.2d 268 (1987) (quoting Restatement Torts 2d, § 46, comment g, at 76).

The Court finds that the events giving rise to Plaintiff's claims, even taken in a light most favorable to Plaintiff, do not rise to the level of extreme and outrageous conduct under Michigan law. This case involves a run-of-the-mill loss of property. The Michigan Supreme Court has acknowledged that its "understanding of 'extreme and outrageous conduct' sets a high threshold for such conduct, which is not met by mere 'inconsiderate and unkind' behavior." Hayes, 767 N.W.2d at 437 (quoting Roberts, 374 N.W.2d at 909). Courts have rejected claims when considering far more egregious conduct. See, e.g., Duran v. Detroit News, 504 N.W.2d 715, 720 (Mich. Ct. App. 1993) (Defendant Newspaper published article publicizing plaintiffs' location in Detroit when there where death threats against them). Therefore, Plaintiff's claim fails as a matter of law.

**F. Michigan Constitution**

Plaintiff cites two articles of the Michigan Constitution as bases for her claims. Because she did not respond to Dearborn Defendants' request for summary judgment o

16

these claims, the Court deems them abandoned. Further, these claims fail on the merits.

Article XI of the Michigan Constitution deals exclusively with the terms of employment of the State of Michigan's public officers. Even if the Court assumes that it creates a private right of action, it has no application in the instant case. In addition, Davis cites Article XVII in the Michigan Constitution, which does not exist.

Plaintiff failed to respond to Dearborn Defendants' arguments, and therefore, the Court grants Dearborn Defendants' request for summary judgment on the claim brought pursuant to the Michigan Constitution.

### G. Michigan Open Meetings Act

Pursuant to MICH. COMP. LAWS § 15.263, Michigan public bodies are required to conduct nearly all business at open meetings. Plaintiff's vehicle was towed at the direction of a Dearborn police officer. An individual acting in his official capacity is not a "public body" for purposes of the Act. Craig v. Detroit Pub. Sch. Chief Exec. Officer, 697 N.W.2d 529, 533 (Mich. Ct. App. 2005). Accord Herald Co. v. Bay City, 614 N.W.2d 873 (Mich. 2000) (observing that the term "public body" connotes a collective entity and that a single individual is not generally recognized as a "board," "commission," "committee," "subcommittee," "authority," or " council," terms that the Legislature chose to describe "public body"). There is no assertion that the officer involved held a meeting regarding her vehicle. Therefore, the Court grants summary judgment on this claim.

### IV. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Dearborn Defendant Motion for Summary Judgment is **GRANTED IN PART AND DENIED IN PART**.

The parties are to appear for a settlement conference on **January 12, 2011**, at **3:00 p.m.** in Rm 277.

**IT IS SO ORDERED**.

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

DATED: December 17, 2010

### CERTIFICATE OF SERVICE

Copies of this Order were served upon Plaintiff and counsel of record on this date by ordinary mail and/or electronic filing

                                            _____
                                            s/Bernadette M. Thebolt

                                            Case Manager